**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2051-16T4

LARS STERNAS,

    Plaintiff-Appellant,

v.

DMH2, LLC, a New Jersey
Limited Liability Company, and
PLANNING BOARD OF THE
TOWNSHIP OF VERONA,

    Defendants-Respondents.

_____

Argued April 30, 2018 - Decided February 4, 2019

Before Judges Accurso and O'Connor.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Docket No. L-7289-15.

Angelo Cifelli, Jr. argued the cause for appellant (Piro, Zinna, Cifelli, Paris & Genitempo, LLC, attorneys; Angelo Cifelli, Jr., of counsel; Kathryn Kyle Forman, on the briefs).

John P. Inglesino argued the cause for respondent DMH2, LLC (Inglesino, Webster, Wyciskala &

Taylor, LLC, attorneys; John P. Inglesino, of counsel; Derek W. Orth, on the brief).

Mark J. Semeraro argued the cause for respondent Planning Board of the Township of Verona (Kaufman, Semeraro & Leibman, LLP, attorneys; Mark J. Semeraro, of counsel; Bryan P. Regan, on the brief).

The opinion of the court was delivered by

O'CONNOR, J.A.D.

In this prerogative writs action, defendant DMH2, LLC (DMH2) submitted an application to defendant Verona Township Planning Board (Board), seeking site plan approval to construct a building that would include both retail and residential uses. During the hearings before the Board, an issue arose as to whether DMH2's application required variance relief from certain provisions of the Township's ordinances pertaining to setback and buffer requirements. The Board ultimately determined such variance relief was not required and granted DMH2 site plan approval.

In addition, during one of the hearings, plaintiff Lars Sternas, an objector, challenged whether one Board member, who was also the municipal engineer (the engineer), had a conflict of interest because he had ex parte communications with DMH2. The engineer did not deny having such contacts with DMH2 but refused to recuse himself and ultimately voted to approve the site plan application; the vote on the application was five to four.

2

Plaintiff filed a complaint in lieu of prerogative writs challenging the decision that DMH2's application did not require variance relief and contending the engineer had a conflict of interest that warranted the resolution vacated. The trial court rejected plaintiff's arguments and upheld the resolution, entering a judgment on December 8, 2016. Plaintiff appeals from that judgment. For the reasons that follow, we vacate the judgment and remand to the trial court for further proceedings.

I

The engineer was appointed to the Planning Board by the mayor pursuant to N.J.S.A. 40:55D-23(a), which requires a mayor to appoint one township official to a municipality's planning board. Ibid. A township official who sits on a planning board is referred to as a "Class II" member. A municipal engineer is a township official.

It is unclear from the record how or at what point in the proceedings before the Board that plaintiff discovered the alleged conflict, but in response to plaintiff's inquiries at one of the hearings, the engineer, who was not placed under oath, stated he met with DMH2 and its engineer jointly "several times." The engineer also stated he may have had email communications with DMH2's engineer, but was not sure.

3

During a subsequent hearing, the engineer commented, again without having been sworn, that he has always engaged in conversations with applicants, "giving directions as to what forms have to be filled out, and what mapping has to be presented for either the Board of Adjustment or the Planning Board, [in] my capacity as municipal engineer." He stated that, in this matter, he provided such direction to DMH2, "just giving [it] directions from the standpoint of what forms and what mapping was necessary to be submitted to this Board." As stated, the engineer declined to recuse himself and voted to approve the site plan application.

On the conflict issue, the trial court found the engineer did not own property within 200 feet of the property that DMH2 sought to develop, was not related to any person associated with DMH2, and did not stand to gain financially by approving the site plan application. The court further found there was "nothing unusual" about the engineer's ex parte communications with DMH2. For reasons unnecessary to recite, the court also agreed with the Board that DMH2's application did not require variance relief.

On appeal, plaintiff contends the trial court's findings on both issues were flawed, necessitating reversal. On the conflict issue, plaintiff makes clear he is not "attributing any improper motive" to the engineer. However, plaintiff maintains that, in its meetings with DMH2 representatives, DMH2

4

had the opportunity to and could have influenced the engineer to favor its position, a factor plaintiff contends the trial court overlooked.

For the reasons set forth below, a remand is necessary to determine whether the engineer had a conflict of interest when he heard and voted upon DMH2's application. In light of this disposition, it is premature to address the merits of plaintiff's argument that DMH2 needed variance relief. The reason is that, even if DMH2 does not require variance relief, the resolution approving the application cannot be salvaged if the engineer had a conflict of interest. The resolution shall have to be voided and set aside, and a new hearing on the application conducted. See Randolph v. City of Brigantine Planning Bd., 405 N.J. Super. 215, 234 (App. Div. 2009)(holding the proceedings of a planning board were void in their entirety because a member of the board who participated in such proceedings had a conflict of interest); see also Haggerty v. Red Bank Borough Zoning Bd. of Adj., 385 N.J. Super. 501, 516-17 (App. Div. 2006) (setting aside decision of board of adjustment because of a board member's conflict of interest).

## II

"The need for unquestionable integrity, objectivity and impartiality is just as great for quasi-judicial personnel as for judges." Randolph v. City of Brigantine Planning Bd., 405 N.J. Super. 215, 226 (App. Div. 2009) (quoting

5

Kremer v. City of Plainfield, 101 N.J. Super. 346, 352-53 (Law Div. 1968)).

Under our common law, "[a] public official is disqualified from participating in judicial or quasi-judicial proceedings in which the official has a conflicting interest that may interfere with the impartial performance of his duties as a member of the public body." Wyzykowski v. Rizas, 132 N.J. 509, 523 (1993) (alteration in original) (quoting Scotch Plains-Fanwood Bd. of Educ. v. Syvertsen, 251 N.J. Super. 566, 568 (App. Div. 1991)).

"[W]hether a particular interest is sufficient to disqualify is necessarily a factual one and depends upon the circumstances of the particular case." Van Itallie v. Borough of Franklin Lakes, 28 N.J. 258, 268 (1958) (citing Aldom v. Borough of Roseland, 42 N.J. Super. 495, 503 (App. Div. 1956)). "If there is [a disqualifying] 'interest,' there is disqualification automatically, entirely without regard to actual motive, as the purpose of the rule is prophylactic . . . ." McNamara v. Borough of Saddle River, 64 N.J. Super. 426, 429 (App. Div. 1960). Therefore, actual proof of dishonesty need not be shown. Aldom, 42 N.J. Super. at 503. An actual conflict of interest is not the decisive factor; the issue is whether there is a potential for conflict. Griggs v. Borough of Princeton, 33 N.J. 207, 219 (1960) (citing Aldom, 42 N.J. Super. at 502). "[I]t is the mere existence of the interest, not its actual effect, which requires the official action to be invalidated." Twp. of Lafayette v. Bd. of Chosen

6

Freeholders of the County of Sussex, 208 N.J. Super. 468, 473 (App. Div. 1986) (citing Griggs 33 N.J. at 220).

In determining whether a conflict exists, "[t]he potential for psychological influences cannot be ignored." Barrett v. Union Twp. Comm., 230 N.J. Super. 195, 201 (App. Div. 1989) (alteration in original) (quoting Twp. of Lafayette, 208 N.J. Super. at 473.). "Officials must be free of even the potential for entangling interests that will erode public trust in government actions." Thompson v. City of Atlantic City, 190 N.J. 359, 374 (2007). As one leading commentator on the topic of conflicts of interest put it, "Would an impartial and concerned citizen, intelligent and apprised of all the facts in the situation, feel that there was the potential for non-objectivity on the part of the officeholder making a decision? If the answer is affirmative the appearance of conflict exists." 34 N.J. Practice Series, Local Government Law § 9.4, at 412-413 (Michael A. Pane, Jr.) (2007) (citations omitted).

In Smith v. Fair Haven Zoning Bd. of Adjustment, 335 N.J. Super. 111, 114 (App. Div. 2000), the plaintiffs appealed from a judgment affirming the Fair Haven Zoning Board of Adjustment's resolution granting dimensional variances to the defendant homeowners. Among other things, the plaintiffs contended members of the Zoning Board engaged in impermissible ex parte communications with the homeowners during site visits. Ibid.

7

In response to the plaintiffs' contention, the Law Division judge remanded the matter to the Zoning Board for a hearing to supplement the record. Id. at 116. During that hearing, the members of the Zoning Board testified about the conversations they had with the homeowners and others present during the site visits. Id. at 118-19. Based upon the supplemented record, the Law Division judge determined none of the communications among the members, the homeowners, and plaintiff was prejudicial to any party and that no further judicial intervention was necessary. Id. at 116, 118-19. We agreed with that assessment, although we added the following cautionary comments. Id. at 120.

Specifically, we noted there should not be ex parte conversations between board members and interested parties pertaining to the merits or lack of merit of an application. Ibid. Although we couched our comments in the context of communications during site visits, see ibid., this principle applies whether a communication occurs during a site visit or in any other context or setting. We repeated the established principle that interested parties must voice their comments and arguments at hearings conducted by the board, not ex parte. Ibid. Further, to ensure due process, a board's decisions must be made on the basis of the evidence presented at its hearings. Ibid.

8

Defendants assert <u>Neu v. Planning Bd. of Tp. of Union</u>, 352 N.J. Super. 544 (App. Div. 2002) supports their argument that the ex parte communications between the engineer and DMH2 were acceptable, but <u>Neu</u> is readily distinguishable. In that matter, the plaintiffs were homeowners who challenged defendant Union Township's Planning Board's final approval of a major subdivision and site plan. <u>Id.</u> at 547.

During the hearings before the Planning Board, evidence emerged that the developer contemplated building an elevated water storage tank. <u>Id.</u> at 548. The Planning Board commissioned an independent engineering firm to examine alternative water systems, which subsequently issued a report proposing ground-level water storage alternatives. <u>Ibid.</u>

While the matter was still pending before the Planning Board, the mayor, representatives of the developer, and two Planning Board members met to discuss the report. <u>Id.</u> at 549. The public was not notified of the meeting in advance and the meeting was not recorded. <u>Ibid.</u>

The plaintiffs appealed from the resolution granting final approval, seeking to have it declared null and void. <u>Id.</u> at 550. One of the plaintiffs' arguments was the two Planning Board members' ex parte communications with the developer warranted nullification of the approval. <u>Ibid.</u> The trial court rejected the plaintiffs' argument and we affirmed. <u>Id.</u> at 550-51.

9

When the Neu matter was before the trial court, those who had been in attendance at the ex parte meeting submitted a certified statement to the court, representing the discussions at the meeting were confined to the report commissioned by the Board, the developer's ability to use a ground-level water storage tank, and the transfer of certain water supply rights. Id. at 549. The trial court determined the matters discussed during the ex parte meeting were fully disclosed and reviewed during ten subsequent public hearings. Id. at 554. Under these particular circumstances, we agreed with the trial court that there was no basis to nullify the final approval because of the ex parte meeting. Id. at 554-55.

Here, the engineer is claiming the discussions between him and DMH2's representative or its engineer were limited to advising what forms needed to be filled out and what maps had to be presented for either the Board of Adjustment or the Planning Board. We also understand plaintiff is not alleging the engineer purposely engaged in any untoward conduct.

Notwithstanding, the engineer admits there were several conversations with DMH2 or its representative. Dispensing more than merely ministerial information may have occurred if there were several contacts. Moreover, any ex parte contact the engineer had with the applicant is not insulated from disclosure and must be examined. In our view, further fact-finding about what

10

was discussed between the engineer and DMH2 or its representative during those several conversations is in order.

We recognize there must be a Class II member on the planning board, see N.J.S.A. 40:55D-23(a), and a Class II member is an official of the municipality. In executing his or her duties, such official may become involved in the processing of certain applications that may be heard by the Board. Nonetheless, ex parte conversations between a Class II member and an applicant or its representative must be avoided. Recusal of a Class II member is required if there is evidence such member and an applicant discussed the merits of a particular application ex parte. See Smith 335 N.J. Super. at 120. Ex parte communications touching on the merits of the application risk the Class II member forming an impression of the merits before witnesses have testified and before any objector or member of the public has placed any objection on the record. See Nanavati v. Burdette Tomlim Mem'l Hosp., 107 N.J. 240, 246-67 (1987) ("Suffice it to state that hearing cannot be fair if the hearing body prejudges the matter before the hearing begins.").

Accordingly, we remand this matter to the trial court so it may schedule a plenary hearing to adjudicate plaintiff's claim the engineer was precluded from hearing DMH2's application because of a conflict of interest. A fully developed record where, as in Smith and Neu, key witnesses testify is vital so

11

that the trial court can adequately assess the merits of plaintiff's claim. We cannot overstate how essential it is to the integrity of local governments that public officials who serve on municipal boards abstain from ex parte communications pertaining to matters before them and insulate themselves from any outside influences.

Finally, we note if a Class II member has a conflict of interest, the tasks the Board must perform will not be interrupted to any significant degree. N.J.S.A. 40:55D-23.2 provides that if in a particular matter a planning board lacks a quorum because a member has a conflict of interest, a member of the municipality's board of adjustment shall take the disqualifying member's place on the planning board to hear such matter. Therefore, if a Class II member sitting on either board is concerned there may be a disqualifying conflict in a matter appearing on a board's agenda, he or she can notify the chairperson of the board so a temporary member may be substituted.

To the extent we have not addressed any argument DMH2 or the Board has advanced on issue of the conflict, it is because the argument was without sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(1)(E).

The December 8, 2016 judgment is vacated and the matter remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13