**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2858-21

IN THE MATTER OF
MARILYN ROMAN AND
SUDHAN THOMAS, and
JERSEY CITY BOARD OF
EDUCATION, HUDSON
COUNTY.

_____

Argued December 5, 2023 – Decided December 21, 2023

Before Judges Sumners and Perez Friscia.

On appeal from the New Jersey Commissioner of Education, Docket No. 1-1/22A.

David B. Rubin argued the cause for appellants Marilyn Roman and Sudhan Thomas (David B. Rubin, PC, attorneys; David B. Rubin, of counsel and on the briefs; Ellen S. Bass, on the briefs).

Sadia Ahsanuddin, Deputy Attorney General, argued the cause for respondent the Commissioner of Education (Matthew J. Platkin Attorney General, attorney; Donna Sue Arons, Assistant Attorney General, of counsel; Sadia Ahsanuddin, on the brief).

Carl Tanksley Jr., General Counsel, attorney for amicus curiae New Jersey School Boards Association (Carl Tanksley Jr., on the brief).

PER CURIAM

Appellants Marilyn Roman and Sudhan Thomas appeal from the May 19, 2022 New Jersey Commissioner of Education's (Commissioner) final decision, which found they had violated N.J.S.A. 18A:12-24(c), a provision of the School Ethics Act (SEA), N.J.S.A. 18A:12-21 to -34, and issued the penalty of a reprimand, accepting the School Ethics Commission's (SEC) adoption of the Administrative Law Judge's (ALJ) initial decision. Appellants, former Jersey City Board of Education (Board) members, argue they did not violate the SEA by voting to approve a settlement regarding actions in which they were personally named. Alternatively, if they erred in voting, the reprimand was erroneously imposed because they had followed the advice of counsel. For the following reasons, we affirm appellants' violation of N.J.S.A. 18A:12-24(c), reverse the reprimand, and remand to the Commissioner to vacate the penalty.

I.

We discern the following facts from the record. Jersey City Superintendent of Schools Marcia Lyles filed a federal lawsuit against the Board, Thomas, Roman, and other defendants. Lyles alleged hostile work environment and tortious interference, among other claims. Specifically, Lyles claimed that Board President Thomas and Roman "engaged in a pattern of

2

harassment and misconduct towards [her], culminating on January 2, 2019, with an unlawful Board [r]esolution of non-renewal of her contract." Further, she alleged they purposely acted to publicly "embarrass and defame" her.

Lyles also filed an administrative action before the Commissioner, which named the Board and Thomas as defendants. Lyles alleged the Board, and specifically Thomas, demonstrated "unlawful bias" and "unethical behavior" against her. An ALJ later dismissed the administrative action as to Thomas.

Appellants were provided indemnification and counsel by the Board in the respective actions. A global settlement of the federal lawsuit and the administrative action was later reached. Appellants individually signed the settlement agreement. Several days later, the Board, including Thomas and Roman, voted to approve the settlement agreement.

Almost eight months later, Matthew Shapiro, a Board member, filed a complaint with the SEC alleging that appellants violated the SEA by "affirmatively vot[ing] to settle the lawsuit in which they were individually named and at risk of damages." Specifically, Shapiro alleged that appellants violated N.J.S.A. 18A:12-24(c) by voting in favor of the settlement, which "served their own personal interests to get themselves out of that lawsuit (at no personal penalty)." Shapiro also contended that appellants violated N.J.S.A.

A-2858-21

18A:12-24.1(e) by "signing the settlement documents as individual agents and then voting on the settlement documents as board trustees," which amounted to "private action with the potential to compromise the [B]oard."

Appellants moved to dismiss the complaint, which was denied by the SEC. Appellants filed an answer to Shapiro's complaint followed by the SEC issuing a notice:  finding "probable cause to credit the allegations that [appellants] violated N.J.S.A. 18A:12-24(c) and N.J.S.A. 18A:12-24.1(e)"; transferring the matter to the Office of Administrative Law for a hearing; substituting the SEC as the complainant for Shapiro; and providing the SEC's attorney, pursuant to N.J.A.C. 6A:28-10.7(b)(1), would prosecute the matter.  Thereafter, the matter proceeded before an ALJ.

Following discovery, the SEC and appellants cross-moved for a summary decision relying on a joint stipulation of facts.  Paragraph eight of the stipulation provided that the "Board voted to approve a written settlement agreement settling both the federal court and administrative proceedings. . . . [Appellants] were both present and voted in favor of approving the settlement."  Paragraph nine provided that, before voting on the settlement agreement, "[appellants] consulted with the Board of Education's [g]eneral [c]ounsel . . . who explicitly advised them that there was no ethical impediment to their voting on the matter

or signing the settlement agreement." Before the ALJ, appellants argued they did not commit an ethical violation because they only voted on the settlement after the Board's counsel separately advised them that no conflict would prevent them from voting.

In an initial decision, the ALJ partially granted appellants' motion for a summary decision, finding no violation under N.J.S.A. 18A:12-24.1(e); and partially granted the SEC's motion, finding appellants violated N.J.S.A. 18A:12-24(c). The ALJ found that appellants did not violate N.J.S.A. 18A:12-24.1(e) because "no conduct asserted suggest[ed] [appellants] made promises to anyone concerning" the "voting upon or execut[ion] [of] the settlement agreement." However, the ALJ found appellants violated N.J.S.A. 18A:12-24(c), reasoning that although they "evidenced sensitivity to the issue of potential conflict in seeking counsel's advice," and it was "reasonable to rely upon such advice," "a public member could justifiably believe that their objectivity was impaired when voting upon and executing the agreement." Further, the ALJ found that appellants "acted in their official capacity in a matter where they had personal involvement and received a benefit in violation of N.J.S.A. 18A:12-24(c)" because "[u]nder the settlement agreement terms, Lyles agreed not to sue Roman

5

or Thomas and release[d] them from all claims or actions she could bring against them."

The ALJ considered the Board's counsel's certification that he did not recall giving advice, but he would have intervened if he believed a conflict existed. Further, if asked, he "likely would have told them that he saw no problem because they were being completely indemnified by the school district, as required by statute, and were not securing any personal benefit." He further certified that, in his view, there were no ethical problems with their voting. The ALJ recommended the penalty of a reprimand for appellants' violation of N.J.S.A. 18A:12-24(c).

The SEC, substantially for the same reasons, adopted the ALJ's findings that appellants violated N.J.S.A. 18A:12-24(c) but did not violate N.J.S.A. 12-24.1(e). The SEC also adopted the ALJ's recommended penalty of a reprimand. Appellants appealed the SEC's decision to the Commissioner of Education, which the SEC opposed.

The Commissioner issued a final decision affirming the SEC's decision. Given Lyles's claims that appellants "acted improperly, including by engaging in a pattern of misconduct and harassment," the Commissioner found appellants' "interest in resolving the claims [wa]s not one fully shared with the public."

Additionally, the Commissioner found that the public could "justifiably believe" appellants' "objectivity was impaired when voting to approve the settlement." The "fact that [appellants] were financially indemnified for the costs of the [actions] and settlement," the Commissioner found, was not "determinative" because the "financial costs [we]re not the only benefit to settling [the actions]." Finally, the Commissioner found the "lesser penalty" of a reprimand was appropriate considering appellants settled the actions involving "the [B]oard as a whole rather than . . . individual ethics charges" and because appellants had relied on the advice of counsel.

Before us, appellants argue the Commissioner's decision erroneously: expanded the meaning of N.J.S.A. 18A:12-24(c) to find appellants committed a violation; committed de facto rulemaking under N.J.S.A. 18A:12-24(c); and rejected appellants' advice of counsel defense.

New Jersey School Boards Association, appearing as amicus curiae, supports appellants' position, arguing because "no greater benefit accrued to these [B]oard members than that which could reasonably be expected to accrue to other members of the board, no conflict and therefore no penalty should be assessed." Amicus also posits the Commissioner's "portion of the decision imposing a penalty on these board members" should be reversed.

7

II.

"Judicial review of agency determinations is limited." Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018). "An administrative agency's final quasi-judicial decision will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." In re Herrmann, 192 N.J. 19, 27-28 (2007). "Courts afford an agency 'great deference' in reviewing [the agency's] 'interpretation of statutes within its scope of authority.'" N.J. Ass'n of Sch. Adm'rs v. Schundler, 211 N.J. 535, 549 (2012) (quoting N.J. Soc'y for the Prevention of Cruelty to Animals v. N.J. Dep't of Agric., 196 N.J. 366, 385 (2008)). "Nonetheless, 'when an agency's decision is based on the "agency's interpretation of a statute or its determination of a strictly legal issue," we are not bound by the agency's interpretation.'" In re Ridgefield Park Bd. of Educ., 244 N.J. 1, 17 (2020) (quoting Saccone v. Bd. of Trs., Police & Firemen's Ret. Sys., 219 N.J. 369, 380 (2014)).

To effectuate the Legislature's intent when interpreting a statute, a court must first examine the plain language and ascribe to its words their ordinary meaning. Conforti v. County of Ocean, 255 N.J. 142, 163 (2023). "Where statutory language is clear, courts should give it effect unless it is evident that

the Legislature did not intend such meaning." Bubis v. Kassin, 184 N.J. 612, 626 (2005) (quoting Rumson Ests., Inc. v. Mayor of Fair Haven, 177 N.J. 338, 354 (2003)). We "ascribe[] to the statutory words their ordinary meaning and significance and read[] them in context with related provisions so as to give sense to the legislation as a whole." W.S. v. Hildreth, 252 N.J. 506, 518 (2023) (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)). "If the language [of a statute] is clear, the court's job is complete." In re DiGuglielmo, 252 N.J. 350, 360 (2022) (quoting In re Expungement Application of D.J.B., 216 N.J. 433, 440 (2014)). We review statutory interpretation de novo. In re Registrant H.D., 241 N.J. 412, 418 (2020).

In enacting the SEA, "the Legislature declared its intention 'to ensure and preserve public confidence' in local school board members by providing local board members with advance guidance on ethical conduct so that such members might conduct their personal affairs appropriately and within the bounds ethically expected." Bd. of Educ. of Sea Isle City v. Kennedy, 196 N.J. 1, 16 (2008) (citation omitted) (first quoting N.J.S.A. 18A:12-22; and then citing N.J.S.A.18A:12-24(j)). N.J.S.A. 18A:12-24(j) states, "Nothing shall prohibit any school official, or members of his immediate family, from representing

himself, or themselves, in negotiations or proceedings concerning his, or their, own interests." N.J.S.A. 18A:12-24(c) states:

> No school official shall act in his official capacity in any matter where he, a member of his immediate family, or a business organization in which he has an interest, has a direct or indirect financial involvement that might reasonably be expected to impair his objectivity or independence of judgment. No school official shall act in his official capacity in any matter where he or a member of his immediate family has a personal involvement that is or creates some benefit to the school official or member of his immediate family.

Our Supreme Court has held that, under the common law, "[a] public official is disqualified from participating in judicial or quasi-judicial proceedings in which the official has a conflicting interest that may interfere with the impartial performance of his duties as a member of the public body." Wyzykowski v. Rizas, 132 N.J. 509, 523 (1993) (alteration in original) (quoting Scotch Plains-Fanwood Bd. of Educ. v. Syvertsen, 251 N.J. Super. 566, 568 (App. Div. 1991)). A determination of "[w]hether a particular interest is sufficient to disqualify is necessarily a factual one and depends on the circumstances of the particular case." Paruszewski v. Township of Elsinboro, 154 N.J. 45, 58 (1998) (quoting Wyzykowski, 132 N.J. at 523). "The question is whether there is a potential for conflict, not whether the conflicting interest actually influenced the action."

10

Haggerty v. Red Bank Borough Zoning Bd. of Adjustment, 385 N.J. Super. 501, 513 (App. Div. 2006) (citing Wyzykowski, 132 N.J. at 523).

## II.

The plain language of N.J.S.A. 18A:12-24(c) prohibits a board member from "act[ing] in his official capacity in any matter where he . . . has an interest, has a direct or indirect financial involvement that might reasonably be expected to impair his objectivity or independence of judgment" and from "act[ing] in his official capacity in any matter where he . . . has a personal involvement that is or creates some benefit to the school official." Ibid. The legislative intent is clear that board members shall not participate in a matter where they have an interest that may interfere with their impartial performance. We therefore concur with the Commissioner that appellants had a statutory conflict of interest under N.J.S.A. 18A:12-24(c) as defendants in Lyles's complaint, which alleged their explicit unethical and harassing misconduct. Thus, their voting on the settlement agreement was prohibited. As the Commissioner found, Lyles's complaint asserted claims against appellants for "personally" and "separately" acting "improperly" outside of their membership on the Board. The Commissioner's finding that appellants' "interest[s] . . . [were] not . . . fully shared with the public" was supported by the "substantial credible evidence."

11

Appellants' arguments that they had no interest in the outcome of the actions because they were fully indemnified, had appointed counsel, and were only sued "for dramatic effect" are unpersuasive. Appellants derived a benefit from settling the actions which released them from all claims and terminated their personal involvement. We discern no reason to disturb the Commissioner's finding that under the plain language of N.J.S.A. 18A:12-24(c), appellants acted in their official capacities on a matter where they had "a personal involvement that . . . create[d] some benefit."

Further, we decline to address appellants' argument, raised for the first time on appeal, that the Commissioner's determination on N.J.S.A. 18A:12-24(c) "expanded the meaning and interpretation" of the provision "in a manner that constitute[d] rulemaking and [wa]s thus noncompliant with the APA." See Zaman v. Felton, 219 N.J. 199, 226-27 (2014) (recognizing claims that are not presented to a trial court are inappropriate for consideration on appeal).

We, however, part ways with the Commissioner's issuance of a reprimand. We have previously considered four prerequisite factors to an advice of counsel defense regarding an agency's decision on an ethical violation. See In re Zisa, 385 N.J. Super. 188, 198-99 (App. Div. 2006). They are: (1) "[t]hat the approval or advice was received prior to the action being taken"; (2) "[t]hat the individual

who offered the advice or approval relied upon possessed authority or responsibility with regard to ethical issues"; (3) "[t]hat the individual seeking advice or approval made a full disclosure of all pertinent facts and circumstances"; and (4) "[t]hat the individual compl[ied] with the advice received, including any restrictions it might contain." Ibid. (citations omitted).

Appellants squarely demonstrated all four prerequisites to avail of an advice of counsel defense. It was stipulated that appellants each sought the advice of the Board's counsel, who had the authority to provide advice, before voting to approve the settlement. Appellants certified that they separately consulted the Board's counsel about the propriety of voting on the settlement of the actions in which they were named defendants. Thomas recalled discussing with counsel whether he would have to sign the settlement agreement as Board President and if that "pose[d] a[] conflict." Notably, the SEC stipulated that counsel "explicitly advised them that there was no ethical impediment to their voting on the matter or signing the settlement agreement." Appellants were advised by informed counsel that there was no ethical barrier to their voting and relied on that advice in approving the settlement, satisfying all four prerequisites.

13

Under N.J.S.A. 18A:12-29(f), the SEC "shall be authorized to determine and impose the appropriate sanction including reprimand, censure, suspension[,] or removal of the school official found to have violated [the SEA]." The plain language of the provision does not foreclose the Commissioner from assessing no penalty, as an "appropriate sanction includ[es]" but does not require the penalty of "reprimand." See ibid. We note the Commissioner failed to separately consider the four prerequisites elucidated in Zisa in "concur[ring] with the ALJ and the SEC" regarding the penalty and finding the penalty commensurate with appellants' reliance on counsel's advice. The application of the advice of counsel defense requires a fact-sensitive analysis to determine if the four prerequisites to an advice of counsel defense were met. Here, appellants met all the conditions to warrant the defense of advice of counsel. See Zisa, 385 N.J. Super. at 199. Thus, we reverse the imposition of the penalty of a reprimand and direct the Commissioner to vacate the penalty.

To the extent not addressed, appellants' remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14

A-2858-21